## Illyes et al. *v.* White River Light and Power Company.

[No. 21,635.     Filed January 24, 1911,]

1. **Eminent Domain.**—*Right to Exercise.*—The right to exercise the power of eminent domain can be claimed only by those having a clear statutory authority so to do. p. 121.

2. **Eminent Domain.**—*Heat, Light and Power Companies.*—Under §5081 Burns 1908, Acts 1907 p. 277, §8, providing for the condemnation of land by companies formed for the purpose of manufacturing and selling electricity produced by water power, and Acts 1909 p. 276, extending such right to all companies producing electricity for such purposes, any corporation organized to produce electricity for sale to the public may condemn lands for a reservoir to be used in generating electricity. p. 121.

3. **Eminent Domain.**—*Electricity.*—*Corporations.*—*Statutes.*—The act of 1909 (Acts 1909 p. 276), providing that all corporations organized to produce electricity for public use shall have the right of eminent domain, and further providing that such act shall not be "construed to affect in any manner the rights or powers of any company or corporation organized or existing under * * * any other law of this State," was intended to protect all rights theretofore granted to such companies. p. 122.

4. **Eminent Domain.**—*Amount of Land Appropriated.*—*Statutes.*—*Appeal.*—Statutes giving to corporations formed for the manufacture and sale of electricity the right to appropriate such land as may be "necessary" for the purpose, authorize the taking of such a reasonable amount of land as the circumstances require, and a finding by the court upon conflicting evidence that a certain amount is necessary is conclusive on appeal. p. 122.

5. **Boundaries.**—*Rivers.*—*Description.*—*Appropriation of Land.*—A description in an eminent domain proceeding, fixing the line as commencing at a certain point, thence south to White river, a

Illyes *v.* White River Light, etc., Co.—175 Ind. 118.

non-navigable stream, "thence up the meanderings of said White river to the north line of section 21," includes the land to the thread of White river.  p. 122.

6. EMINENT DOMAIN. — *Lands Fronting on Water.* — *Riparian Rights.*—A condemnation of land abutting upon a body of water embraces the riparian right of occupancy of the submerged land, though no mention is made thereof.  p. 123.

7. BOUNDARIES.—*Descriptions.*—*Real Property.*—In descriptions of real property, monuments first control, then courses and distances, and lastly, the designated quantity.  p. 123.

8. EMINENT DOMAIN.—*Description.* — *Quantity.* — *Complaint.* — A complaint, in a condemnation proceeding, setting out the monuments to a tract of land, and alleging that the tract contained but 65.5 acres, when in fact it contained ten or twelve acres more, is sufficient to cover the whole tract within the monuments.  p. 123.

9. EMINENT DOMAIN.—*Complaint.*—*Amendment.*—Where, in a complaint in an eminent domain proceeding, the description of the land is uncertain, the trial court may permit an amendment of the complaint, even after verdict.  p. 123.

10. STATUTES.—*Title.*—*Subject-Matter.*—*Constitutional Law.*—The title of the act of 1907 (Acts 1907 p. 277) which reads: "An act authorizing the formation of companies for the manufacture and sale of electricity for heating, lighting and power purposes to towns and cities and to the public, defining their powers," sufficiently covers a provision of such act giving such companies the right to condemn lands.  p. 124.

11. EMINENT DOMAIN.—*Attempts to Purchase Land Sought to be Appropriated.*—Where a corporation offered and tendered a landowner the amount of money that she had theretofore agreed to take for a certain tract of land, but she refused it and asked almost twice such amount, a good-faith attempt to purchase the land is sufficiently shown.  p. 124.

From Hamilton Circuit Court; *Meade Vestal,* Judge.

Action by the White River Light and Power Company against Emma A. Illyes and another.  From an interlocutory order for plaintiff, defendants appeal.  *Affirmed.*

*Fred E. Hines,* for appellants.

*Kane & Kane,* for appellee.

MORRIS, J.—Appellee is a corporation organized in 1906, under the manufacturing and mining act, to manufacture electricity, and to supply light, heat and power to persons

and municipalities, and, for the purpose of securing power for such manufacture, to erect and maintain a dam in White river in Hamilton county.

In 1907 (Acts 1907 p. 277, §5074 *et seq.* Burns 1908), the General Assembly enacted a law authorizing the formation of companies for the manufacture and sale of electricity for lighting, etc., to cities and towns. Section eight of that act (§5081, *supra*) authorized such corporations to condemn lands of individuals for dams and other structures, such condemnation to be made under the eminent domain act of 1905 (Acts 1905 p. 59, §893 *et seq.* Burns 1905). By section ten of this act (§5083, *supra*), the grant of the powers therein enumerated was limited to companies organized to produce electricity by means of water power only. In 1909 (Acts 1909 p. 276) said section ten was amended to read as follows: "The provisions, powers and privileges contained within this act shall extend to and be used by all companies organized to produce electricity: Provided, however, that no condemnation shall ever be made by virtue of this law of any lands lying within the corporate limits of any city or town: Provided, nothing herein contained shall be construed to affect in any manner the rights or powers of any company or corporation organized or existing under or by virtue of the provisions of any other law of this State."

Appellee filed its complaint in the Hamilton Circuit Court to condemn a tract of land in said county owned by appellant Emma A. Illyes, which, it averred, it intended to use as a part of its reservoir above its dam in process of construction, for storing water to be used by appellee in generating electricity with which it intended to furnish light, heat and power to the citizens of Noblesville and vicinity. Notice was served on appellant Emma A. Illyes, and her coäppellant Peter P. Illyes, who is her husband. A special appearance was entered by appellants, who filed a motion to quash the summons, which motion was overruled. Thereupon, on December 10, 1909, appellee, pursuant to leave granted by

the court, filed an amended complaint, which contained the allegations before named. On December 24, 1909, appellants filed their written objections to the appointment of appraisers. The cause was submitted to the court for trial, which resulted in the overruling of the objections, and the appointment of appraisers to assess the damages. From that interlocutory order, this appeal is prosecuted.

Appellants specify seventeen errors, but fail to support a number of them either by argument or the citation of authorities. The alleged errors, not waived, will be discussed in their order.

Appellants contend (1) that acts conferring the power of eminent domain are to be strictly construed, and (2) that the complaint does not state facts sufficient to show that appellee has the power to exercise the right to appropriate appellants' land.

The power of eminent domain has been characterized as a "high and dangerous one," and it cannot be exercised by appellee unless clear legislative authority can be shown

1. for so doing. *Kinney* v. *Citizens Water, etc., Co.* (1909), 173 Ind. 252, and cases cited; *Morrison* v. *Indianapolis, etc., R. Co.* (1906), 166 Ind. 511; *Board, etc.,* v. *Jarnecke* (1905), 164 Ind. 658. Appellants' contention, that the complaint is insufficient under §4596 Burns 1908, Acts 1905 p. 81, is correct. Appellee is not asserting any such right

2. by reason of the provisions of that act, but is claiming the power of eminent domain under the provisions of the act of 1907, *supra,* which was amended as to section ten thereof in 1909. Section eight of the act of 1907 (§5081, *supra*), expressly authorizes companies organized under the provisions of that act to manufacture and sell electric current to towns and cities for the purpose of supplying heat, light and power, to acquire, own, maintain and operate all necessary and convenient lands and dams, and, to this end, to appropriate and condemn lands of individuals necessary to the carrying out of its objects; and expressly provides for the

overflowage by backwater from its dams. Appellee could not have availed itself of the privileges conferred by the act of 1907, as originally enacted, but the General Assembly of 1909 amended section ten of the act so as to extend to all companies organized to produce electricity the powers and privileges contained in the act of 1907. It is provided, however, in said amendment, that nothing therein contained " shall be construed to affect in any manner the rights or powers of any company or corporation organized or existing under or by virtue of the provisions of any other law of this State." It is evident that by this proviso the legislature intended merely that no power nor right held by any electrical company, previous to the amendment, by virtue of the provisions of any other law of the State, should be abridged.

The complaint states all the necessary facts to bring appellee within the express provisions of the act of 1907 as amended in 1909.

It is next contended that the evidence does not show a necessity for taking the amount of land described in the complaint. The statute authorizes appellee to appropriate such amount of land as may be " necessary " to the carrying out of its objects. This enables it to take such an amount as may be reasonably necessary under the circumstances. 1 Lewis, Eminent Domain (2d ed.) §279.

There was evidence tending to show that by the construction of a concrete dike, at a probable expense of $100,000, the use of a great portion of the land sought to be appropriated in this action might be avoided, but the evidence supports the decision of the trial court, that it was reasonably necessary, under the circumstances, for appellee to take the amount of land designated in its complaint.

It is next contended by appellants that the land described in the complaint extends only to the low-water mark of the river, when, in fact, appellant Emma A. Illyes owns the land to the thread of the stream; that between low-water mark and the thread of the

stream there is a tract of ten or twelve acres of land owned by said appellant which will be overflowed, but which is not embraced in the description.

In the amended complaint and interlocutory order, so much of the description as pertains to this matter is as follows: " thence south on said line to White river; thence up the meanderings of said White river to the north line of section twenty-one, same township and range; thence west to the place of beginning." This description includes the land to the thread of the stream. White river, in Hamilton county, is not navigable, and the title of riparian proprietors extends to the thread of the river. *Ross* v. *Faust* (1876), 54 Ind. 471, 23 Am. Rep. 655; *Indianapolis Water Co.* v. *Kingan & Co.* (1900), 155 Ind. 476; 1 Lewis, Eminent Domain (2d ed.) §60; *Sizor* v. *City of Logansport* (1898), 151 Ind. 626, 44 L. R. A. 814.

A condemnation of upland abutting upon a body of water embraces the riparian right of occupancy of submerged land, although no specific mention is made of riparian rights. *Hanford* v. *St. Paul, etc., R. Co.* (1889), 43 Minn. 104, 44 N. W. 1144, 7 L. R. A. 722.

In descriptions of real estate, monuments first control, then courses and distances, and lastly, the designated quantity. *Allen* v. *Kersey* (1885), 104 Ind. 1. The fact that the complaint avers that the tract appropriated contains only sixty-five and five-tenths acres, when, in fact, the tract contains ten or twelve acres more within the monuments designated therein, does not render the complaint insufficient, nor affect the duties of the appraisers to take into consideration, in making their award, all the land embraced within the designated monuments. Even if this were not true, the trial court has power, if the description of the land is incorrect, indefinite or uncertain, to permit an amendment of the complaint, even after verdict. *Darrow* v. *Chicago, etc., R. Co.* (1907), 169 Ind. 99.

Appellants further contend that the act of 1907, *supra,* under which appellee derives its grant of the power to condemn this land, is unconstitutional, because the subject of the act is not embraced in the title. Article 4, §19, of our Constitution requires every act to embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title. The title of the act in question reads as follows: " An act authorizing the formation of companies for the manufacture and sale of electricity for heating, lighting and power purposes to towns and cities and to the public, defining their powers." The latter clause is general in its nature, and was calculated to give notice to the members of the General Assembly and to the public that the body of the act designated and defined certain powers conferred on such corporations. There is nothing restrictive in the title, and nothing to mislead, and it does not embrace more than one subject and matters properly connected therewith, and, consequently, does not violate the said provision of our Constitution. *Mull* v. *Indianapolis, etc., Traction Co.* (1907), 169 Ind. 214; *Advisory Board, etc.,* v. *State, ex rel.* (1908), 170 Ind. 439; *State* v. *Bailey* (1901), 157 Ind. 324, 39 L. R. A. 435; 26 Am. and Eng. Ency. Law (2d e⁻¹) 582; *Bright* v. *McCullough* (1866), 27 Ind. 223; Cooley, Const. Lim. (5th ed.) 179.

Appellant's sixth contention is that there was no *bona fide* effort made to agree to purchase the land before bringing condemnation proceedings. The evidence shows that appellee offered appellant Emma A. Illyes $7,925.40 for the land, and tendered to her this amount of money therefor, but she refused to take less than $200 an acre. The amended complaint states that the quantity of land is sixty-five and five-tenths acres. The $7,925.40 was the amount, plus six per cent interest, for which she had theretofore executed a contract to convey the land to the old Noblesville Hydraulic Company. Appellee made three ineffectual attempts to purchase the land,

but she refused to consider any offer below $200 an acre, notwithstanding her former option (then expired) given to the old hydraulic company to purchase it for less than $7,925.40. The evidence discloses a *bona fide* effort on the part of appellee to purchase the land, and an inability to do so. Appellee had done all in that respect that the law requires. Acts 1905, *supra*; 2 Lewis, Eminent Domain (2d ed.) §302.

There is no error in the record warranting a reversal, and the judgment is affirmed.