## CONNORS v. HEPP ET AL.

[No. 22,320.   Filed April 10, 1914.]

1. DRAINS.—*Report of Commissioners.—Description of Drain.*—A description in the report of drainage commissioners, fixing the terminus of a drain at a certain other drain, will control as against courses and distances set forth therein, as in descriptions of real estate monuments first control, and then courses and distances.   p. 486.

2. DRAINS.—*Proceedings to Tile.—Extension of Drain.—Statutes.* —Section 6174 Burns 1914, Acts 1907 p. 508, relating to drains, expressly provides for extending the length of existing drains, hence, in a proceeding thereunder to tile an existing drain, the drainage commissioners, if they found that its terminus was not a suitable outlet, were authorized to make a report requiring its extension to such place as might furnish a proper outlet.   p. 486.

From White Circuit Court; *George F. Marvin,* Special Judge.

Proceedings on petition of Peter Hepp and others to tile an existing drain, in which Honora Connors remonstrated against the report of the drainage commissioners.   From a judgment for petitioners, the remonstrant appeals.   *Affirmed.*

*Wesley Taylor, Addison K. Sills* and *Addison K. Sills, Jr.,* for appellant.

*L. D. Carey,* for appellees.

MORRIS, C. J.—In 1884, the Board of Commissioners of White County established an open drain, in that county, known as the I. M. Dill ditch.   In 1911, appellees filed their petition, with the board, to tile the Dill ditch, pursuant to the provisions of §6174 Burns 1914, Acts 1907 p. 508.   The drainage commissioners reported in favor of the proposed work, and assessed appellant's lands with certain benefits.   Against this report, appellant filed her remonstrance in which she averred (1) that her lands were assessed too much as compared with certain other lands; (2) that certain other lands were assessed too low; (3) that

her land will not be benefited to the extent of the assessments made. The board, on a hearing, found against appellant on her remonstrance and she appealed the cause to the circuit court. On the hearing, in the latter court, there was a reduction in appellant's assessments, and, as modified, the report of the commissioners was confirmed, and the proposed drain ordered established. Appellant's motion for a new trial, grounded on the insufficiency, in fact and law, of the evidence to support the court's decision, was overruled. The error here assigned is the overruling of that motion.

The report of the commissioners in this cause, fixes a definite point of commencement of the drain, which is followed by a statement of courses and distances, to the terminus, which is fixed in the "Lige Harp ditch," a dredge drain constructed about eight years ago; and which, as alleged in the report, furnishes "a good and sufficient outlet". The report of the drainage commissioners, filed in 1884, in the I. M. Dill drain, was admitted in evidence and shows the terminus of that drain in the "Baker ditch," and shows its depth, at its terminus, and for a distance of more than 200 feet above the same, to have been less than six inches. The starting point, courses and distances, as set out in the Dill drain report, are identical with those set out in the report here, but the depth of this drain, at its terminus, as fixed by the report, is 9.54 feet. Two of appellant's witnesses, whose testimony was uncontradicted, testified that at the present time, the point of intersection of the Dill and Baker ditches is about two hundred feet from the Harp dredge drain. Appellant contends that the judgment should be reversed, because, as claimed, the proposed tile drain must terminate at a point where there is no possible outlet; that without an outlet, there can be no drainage of appellant's land, and consequently no benefits thereto can accrue.

No surveyor or other expert testified regarding the location of the point fixed as the terminus of the Dill drain by

the commissioners' report. The point described 1. might be on the line of the Harp drain as now located. It is possible that the Dill drain was not originally constructed to the point fixed by the report of the drainage commissioners. But if it be conceded that the terminus of the drain here in controversy, tested by the courses and distances set forth in the report, is located as much as 200 feet from the Harp drain, it by no means follows that the proposed drain must end at such place. The report fixes the Harp ditch, concededly a sufficient outlet, as the terminus of the proposed work, and this must control. In descriptions of real estate, monuments first control, and then courses and distances. *Illyes* v. *White River Light, etc., Co.* (1911), 175 Ind. 118, 123, 93 N. E. 670.

The section of the statute under which this proceeding 2. originated expressly provides for extending the length of an existing drain, and if the Dill ditch, as originally constructed, terminated as much as two hundred feet from a suitable outlet, it was within the rightful power of the commissioners, under the petition here, to make a report requiring the extension of the old ditch to such place as might furnish a proper outlet. As appellant's counsel concedes that the Harp ditch affords a suitable outlet, we hold that the evidence is sufficient to support the decision of the trial court. Judgment affirmed.

NOTE.—Reported in 104 N. E. 850.